WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy A. Petri, | No. CV 10-2477-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Claimant's appeal from the Administrative Law Judge's ("ALJ") denial of Claimant's Title II application for disability insurance benefits and Title XVI application for supplemental security income based on disability.

**I.   PROCEDURAL BACKGROUND**

Claimant Peggy A. Petri filed Title II and Title XVI applications for Disability Insurance Benefits and Supplemental Security Income benefits on December 22, 2006, alleging that her disability began on September 15, 2006. (Record Transcript ("TR") 112-29). Claimant's applications were denied on May 31, 2007 and, upon reconsideration, on December 31, 2007 (TR 64 and TR 78). On April 1, 2009, a hearing was held before an ALJ, who issued an unfavorable decision on August 3, 2009. (TR 27 and TR 10). On September 17, 2010, the Appeals Council denied Ms. Petri's request for review of the ALJ's decision.

1  On November 16, 2010, Claimant filed her Complaint for Judicial Review of the Administrative Determination of Claim, which is the subject of this appeal (Doc. 1).

Claimant argues that the Court should vacate the Administrative Law Decision because of procedural error and lack of substantial evidence. (Doc. 16).

## II.    FACTUAL BACKGROUND

On September 16, 2009, Clamant was diagnosed with an inferior wall myocardial infarction. (TR 298). Two days later, Claimant underwent a successful stenting of her right coronary artery. (TR 265). Tests showed a minimal left ventricular systolic dysfunction with inferior hypokinesis, but preserved ejection fraction of 60%. (TR 265). On November 6, 2006, after Claimant experienced night sweats, chest discomfort, shortness of breath and related symptoms, tests showed dyspnea on exertion, hyperlipidemia, and under control hypertension. (TR 249). Doctors recommended that Claimant stop smoking. (*Id.*).

On December 21, 2006, after Claimant experienced chest pain and shortness of breath, tests showed left ventricular hypertrophy with mild mitral regurgitation and normal left ventricular function and hyperlipidemia. (TR 245). As a result of persistent symptoms and an abnormal nuclear stress test, Claimant's doctors decided to repeat the left heart catheterization. (*Id.*). On January 11, 2007, following the left heart catheterization, Claimant presented with no chest pain or shortness of breath, but was complaining of pain in her legs, which the doctors felt could be secondary to venous insufficiency, caused by Claimant's significant varicose veins, or peripheral arterial disease. (TR 242).

On September 20, 2007, Claimant's doctor noted that Claimant's great saphenous vein in her left leg was found to be incompetent, but her insurance company denied approval for surgery. (TR 431). The doctor recommended endovenous laser ablation. (TR 431). Claimant underwent endovenous laser ablation on October 8, 2007. (TR 367).

On January 4, 2008, because of Claimant's complaints of chest pain and exhaustion, Claimant was given a left heart catheteritization, from which her doctor found her left ventriculogram ejection fraction was approximately 45%. (TR 385). In March 2008, Claimant underwent a neurological consultation due to pain, discomfort, numbness,

- 2 -

1  paresthesias in her feet, and sensory disturbance in her upper extremities. (TR 441).
2  Claimant reported that she was diagnosed with carpal tunnel syndrome six years before, but
3  refused surgery because she was concerned about the recovery process. (TR 441).

4  On June 20, 2008, Claimant reported pain in her arms and hand, from her elbows to
5  her fingers, and numbness and paresthesias. (TR 439). In response, her doctor changed her
6  medication, suspected possible early onset diabetes, and recommended a hand surgery
7  evaluation regarding the possibility of carpal tunnel release versus carpal tunnel injection.
8  (TR 440). In September 2008, Claimant's symptoms were stable for the most part, though
9  she stated any time she was on her feet for more than two hours per day, her feet would be
10 quite painful and would feel swollen and throbbing. (TR 437).

11 In October 2008, Claimant reported that, after injections for carpal tunnel injections,
12 she felt relief in her hands for a short period of time, but she still felt pain, numbness, and
13 tingling. (TR 453). She requested surgery for her left hand. (*Id.*). In November 2008,
14 Claimant underwent carpel tunnel surgery, but the surgery was incomplete because of
15 unexpected tissue encountered by the physician during the surgery. (TR 460). Two weeks
16 after the surgery, Claimant reported that her numbness, tingling, and pain were better, though
17 she still had pain in the long finger. (TR 451).

18 At the time of the ALJ's hearing, Claimant was 47 years old and had a past work
19 experience of Quality Control Officer, Financial Aid Officer, File Clerk, Teacher's Aide and
20 Corporate Compliance Officer.[1] (TR 133).

21 Claimant argues that (1) the RFC Assessment stated by the ALJ does not meet legal
22 standards, (2) the ALJ failed to articulate sufficient reasons to justify the decision on the
23 benefit, and (3) the ALJ failed to weigh subjective complaint reporting and medical source
24 opinion evidence. Claimant argues that these errors entitle her to a remand for either an
25 award of benefits or further proceedings based on the ALJ's failure to resolve vocational

26

27 [1] Claimant argues that her position of Corporate Compliance Officer is not past
   relevant work within the meaning of 20 C.F.R. § 404.1560(b)(1). The Court will discuss this
28 argument more fully herein.

1 issues.

## III. LEGAL STANDARD

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* at § 404.1521(b). Further,

1    the impairment must either be expected "to result in death" or "to last for a continuous period
2    of twelve months." *Id.* at § 404.1509 (incorporated by reference in 20 C.F.R. §
3    404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of
4    groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

5         3.     Having found a severe impairment, the ALJ next determines whether the
6    impairment "meets or equals" one of the impairments specifically listed in the regulations.
7    *Id.* at § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the
8    claimant's age, education, and work experience. *Id.* at § 404.1520(d).

9         4.     At step four, the ALJ determines whether, despite the impairments, the
10   claimant can still perform "past relevant work." *Id.* at § 404.1520(a)(4)(iv). To make this
11   determination, the ALJ compares its "residual functional capacity assessment . . . with the
12   physical and mental demands of [the claimant's] past relevant work." *Id.* at § 404.1520(f).
13   If the claimant can still perform the kind of work the claimant previously did, the claimant
14   is not disabled. Otherwise, the ALJ proceeds to the final step.

15        5.     At the final step, the ALJ determines whether the claimant "can make an
16   adjustment to other work" that exists in the national economy. *Id.* at § 404.1520(a)(4)(v).
17   In making this determination, the ALJ considers the claimant's residual functional capacity,
18   together with vocational factors (age, education, and work experience). *Id.* at §
19   404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not
20   disabled. If the claimant cannot perform other work, he will be found disabled. As
21   previously noted, the ALJ has the burden of proving the claimant can perform other
22   substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

23   **IV.   ANALYSIS**

24        With regard to steps 1-3, in this case, the ALJ found that Claimant: (1) had not
25   engaged in substantial gainful activity since September 15, 2006, (2) had the following
26   severe impairments: coronary artery disease, status post myocardial infarction and stenting,
27   carpal tunnel syndrome, and small fiber peripheral neuropathy of the lower extremities, and
28   (3) did not have one of the impairments specifically listed in the regulations. (TR 15-16).

With regard to step 4, the ALJ found that Claimant had the residual functional capacity to perform past relevant work as a Compliance Officer. (TR 16-21).

Claimant does not dispute the ALJ's findings with regard to steps 1-3, but argues that the ALJ's conclusion with regard to step 4 is in error because (1) the RFC Assessment stated by the ALJ does not meet legal standards, (2) the ALJ failed to articulate sufficient reasons to justify the decision on the benefit, and (3) the ALJ failed to weigh subjective complaint reporting and medical source opinion evidence. The Court will discuss each of these arguments in turn.

### A. Whether the Residual Functional Capacity Assessment Meets Legal Standards

#### 1. Past Relevant Work

Claimant argues that her work as a compliance officer does not constitute past relevant work because Claimant did not work at the job long enough to learn the position. (Doc. 16 at 7). "Duration refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work." SSR 82-62, 1982 WL 31386 (Aug. 20, 1980).

The Dictionary of Occupational Titles ("DOT") lists a specific vocational preparation ("SVP") time for each described occupation, which is the amount of time a typical worker needs to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job situation. DICTIONARY OF OCCUPATIONAL TITLES, Appendix C II (4th ed. 1991). In this case, the vocational expert identified the compliance officer position as having an SVP of 8. (TR 44). An SVP of 8 corresponds to "over 4 years and up to and including 10 years" of preparation. Dictionary of Occupational Titles, Appendix C II.

In her Work History Report, Claimant listed the following jobs as work she had performed in the past 15 years: (1) Quality Control Clerk for approximately 10 years; (2)

1 Corporate Compliance Officer for a Beauty School for approximately 6 months; (3) File/Mail
2 Clerk for approximately 1 year and 3 months; (4) Financial Aid Officer for a Beauty College
3 for approximately 2 years and 2 months; (5) Financial Aid Officer for a Motorcycle Institute
4 for approximately 2 years and 2 months; (6) Paraprofessional for approximately 3 years and
5 3 months; and (7) Special Education Assistant for approximately 8 months. (TR 133).
6 Claimant argues that the ALJ erred in relying on the Vocational Expert testimony that
7 Claimant could perform the work of a Compliance Officer because that position is not past
8 relevant work because Claimant did not work as a Compliance Officer long enough to learn
9 the job according to the SVP found in the DOT.

10 The Court agrees that the Record is unclear on this point, but this ambiguity does not
11 allow the Court to adopt Claimant's interpretation of the Vocational Expert's testimony, i.e.
12 that the Compliance Officer position is not past relevant work of Claimant. When asked
13 what Claimant's past relevant work was, the Vocational Expert testified:

> The Claimant has *worked as a compliance officer in a couple of schools* and that work is sedentary exertion. It's a skilled job, SVP 8. She's worked as a teachers' aide. I forgot to look that up. I'm sorry. While I look that up, she worked as a tutor which is light and it's skilled work. She worked as a file clerk, Judge. That's light, semi-skilled. The teachers' aide is light, semi-skilled. However, Judge, the client did work with the special ed population and sometimes those jobs can be more exertional than light depending on the population she works with.

(TR 44-45) (emphasis added). The Vocational Expert did not classify "financial aid officer" separately as one of Claimant's jobs, and the Vocational Expert's assertion that Claimant worked in the position of a Compliance Officer "in a couple of schools" indicates that she had concluded that Financial Aid Officer and Compliance Officer were the same position.

Claimant argues that the Vocational Expert could not have meant to indicate that these two jobs were the same position because the "vocational consultant testified that, assuming the restrictions assessed by the ALJ, [Claimant] would not be able to perform the financial aid officer work as she performed it in the past." (Doc. 26). However, Claimant does not cite to any portion of the Record to support this argument. (*Id.*).

- 7 -

Claimant argues that because Claimant described the jobs of Financial Aid Officer and Corporate Compliance Officer differently in her Work History Report, the Vocational Expert could not have determined that they were the same job. However, the Court cannot determine from the current Record why the Vocational Expert conflated the two positions. Accordingly, additional testimony from the Vocational Expert is necessary to determine why the Vocational Expert determined that Claimant had worked as a Compliance Officer in a couple of different schools and the exact requirements of such a position. It is especially difficult to determine what the Vocational Expert was relying on as past relevant work experience, because when Claimant's counsel asked for the DOT number for the position of a Corporate Compliance Officer, the Vocational Expert replied "186117090." (TR 50). However, this number does not match any DOT number in the Dictionary of Occupational Titles. This Court has no way of determining why or how the Vocational Officer made this error with the DOT number.

Accordingly, the Record is unclear as to whether Claimant's work as Financial Aid Officer/Corporate Compliance Officer constitutes past relevant work that she is currently capable of performing. Because the ALJ relied on the Vocational Expert's testimony that Claimant "is not precluded from performing the demands of her past relevant work as a compliance officer," (TR 21), and it is unclear from the Record what evidence the Vocational Expert was relying on to determine that such work was "past relevant work," the step four finding is inadequate.

As such, the matter should be remanded for additional findings at step four. On remand, the ALJ should hear additional testimony from a vocational expert regarding Claimant's past relevant work. After a determination is made as to past relevant work, the ALJ should ensure compliance with the additional requirements of a step four analysis, including the functional analysis of the physical requirements of the prior job and resolution of any inconsistencies between the Vocational Expert's testimony and the DOT.

### 2.   **Assessment of Residual Function Capacity**

Claimant argues that the ALJ erred in not setting forth a function-by-function

1 assessment of residual functional capacity ("RFC") as required by Social Security Ruling 96-
2 8p. (Doc. 16 at 10-11). Claimant argues that, instead of addressing specific work related
3 functions, the ALJ impermissibly classified the RFC in terms of category of work. Claimant
4 argues that the ALJ needed to specify the length of time Claimant could sit at one time or in
5 a total eight-hour day; and/or, can stand or walk at one time in a total eight-hour day. (Doc.
6 16 at 10).

Social Security Rule 96-8p provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

The Court is not aware of, and Claimant does not cite to, any case requiring the ALJ to specify the length of time a Claimant is able to engage in certain activities. In this case, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is able to lift and carry 10 pounds frequently. She is precluded from repetitive forceful gripping and grasping. The claimant is limited to occasional bending, stooping, kneeling, crawling and climbing ramps and stairs. She is precluded from climbing ladders, ropes and scaffolds. The claimant should avoid concentrated exposure to hazards such as moving machinery.

21 (TR 16). The ALJ then went on to describe the basis for these conclusions, including a
22 summary of Claimant's testimony at the hearing, and determining "the undersigned finds that
23 the claimant's medically determinable impairments could reasonably be expected to cause
24 the alleged symptoms; however, the claimant's statement concerning the intensity,
25 persistence and limiting effects of these symptoms are not credible to the extent they are
26 inconsistent with the above residual functional capacity assessment." (TR 18). The ALJ
27 then went on to discuss the medical evidence supporting Claimant's medical problems and
28 the ALJ's reasoning for determining that they are not as persistent, intense, and limiting as

- 9 -

1 urged by Claimant.

2 By discussing each of Claimant's medical conditions and the weight accorded to the
3 evidence of those conditions, combined with the ALJ's specific findings regarding
4 Claimant's ability to grip, grasp, bend, stoop, kneel, crawl, and climb, the Court finds that
5 the ALJ did assess Claimant's work-related abilities. The ALJ specifically noted that she
6 credited the Vocational Expert's testimony that "claimant, given the above noted limitations,
7 is not precluded from performing the demands of her past relevant work as a compliance
8 officer." (TR 21).

9 Claimant is correct that the ALJ did not specifically find the length of time Claimant
10 could sit at one time or in a total eight-hour day; and/or, can stand or walk at one time in a
11 total eight-hour day. However, Social Security Policy Ruling 96-8 does not require the ALJ
12 to assess Claimant's ability to perform activities at certain lengths of time. Nor is it likely
13 that the ALJ could make such assessments in a case where the ALJ clearly found that
14 Claimant had the medical conditions she complained of, but, at times, Claimant's symptoms
15 were worse than others with regard to all of her medical conditions, and none of Claimant's
16 medical conditions would limit her for any consecutive 12 month period. (TR 18).

17 Nonetheless, because the ALJ must determine whether the duties of a Compliance
18 Control Officer/Financial Aid Officer is past relevant work for Claimant, on remand the ALJ
19 will necessarily have to determine whether, as a result of all of her medical conditions,
20 Claimant is able to perform the specific work-related functions for that past relevant work.
21 Because the determination as to what is past relevant work necessarily leaves an open
22 question as to whether Claimant could perform past relevant work on a function-by-function
23 basis, on remand, the ALJ must make a determination as to whether or not Claimant could
24 perform past relevant work on a function-by-function basis after making a positive
25 determination as to what constitutes past relevant work. Such a determination should be
26 made by further development of the record with regard to Claimant's past relevant work, the
27 nature of such work, and the durational requirements for tasks implicit in that work. Such
28 determinations will have to be made through further testimony of Claimant and further

1  testimony of a Vocational Expert on these issues.

 **B.     Whether the ALJ Articulated Sufficient Reasons to Justify the Decision on the Benefit**

Claimant argues that the ALJ failed to properly weigh subjective complaint reporting and medical source opinion evidence, and, as a result, this Court should credit Claimant's evidence of a disability as true.

 **1.     Whether the ALJ Properly Weighed Subjective Complaint Reporting**

Claimant argues that the ALJ failed to properly weigh her subjective complaint reporting of shortness of breath, fatigue, and foot, hand, and leg pain and the ALJ failed to consider her impairments in "combination."

Once a claimant produces medical evidence of an underlying impairment which is reasonably likely to be the cause of some pain, the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 749-750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc). In this case, there is no question that the ALJ found that there was medical evidence of underlying impairments that would be reasonably likely to cause pain. *See* TR 18 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity requirement.").

The question then is whether the ALJ discredited Claimant's testimony of pain solely because such pain was not supported by objective medical evidence. "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750 (quoting *Bunnell*, 947 F.2d at 345-46; *Fair v. Bowen*, 885 F.2d 597, 603 (9th

- 11 -

Cir.1989)). Factors that the adjudicator should consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell*, 947 F.2d at 346 (citing SSR 88-13, 1988 WL 236011 (July 20, 1988)).

"[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Id.* (citing *Fair*, 885 F.2d at 603. "Another relevant factor may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (internal citation omitted). "An adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." *Id.* (internal citation omitted). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Id.*

In this case, the ALJ made specific findings to support her determination that Claimant's statements concerning the intensity, persistence, and limiting effects of her conditions were not fully credible and did not prevent her from performing light work. While the ALJ did make specific findings that the objective medical evidence did not support the extent of Claimant's complaints (TR 18-19), the ALJ also considered the factors required by SSR 88-13 in making her credibility determination. The ALJ specifically found that Claimant had reported to the Administration that "other reasons she had stopped working" were because her father had a stroke and surgery in January 2006 and Claimant reported to her doctor that, although she previously had a sitting down job, she was now at home taking care of her mother. (TR 19 and TR 358). The ALJ explained that in combination with the other credibility issues, these other reasons not to work "suggest that [Claimant] is not as

limited as alleged and "raise the question whether the claimant's continued unemployment is due to reasons unrelated to her alleged impairments." (TR 19-20).

The ALJ also took into account Claimant's daily activities of performing light household chores, shopping and preparing meals as evidence that Claimant is not "precluded from performing all work." (TR 20). The ALJ found that Claimant exaggerated her difficulty concentrating because she reads regularly and continues to drive, suggesting her ability to concentrate is not significantly impaired. (TR 20).

Claimant argues that it was improper for the ALJ to consider these activities as evidence that Claimant can work. Claimant argues that she should not be penalized for attempting to live a normal life and these activities do not transfer to the grueling pace of a work environment. While the Court agrees that this evidence, taken alone, could not support Claimant's ability to perform all jobs, the ALJ did not make such a conclusion. In accordance with the factors to consider under SSR 88-13, the ALJ considered evidence of daily activities. Such consideration is not improper. *See Fair*, 885 F. 2d at 603 ("More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

Here, the ALJ considered evidence of Claimant's activities and reached the conclusion that she is not precluded from performing "all work." Further, the ALJ relied on several factors when determining Claimant's credibility and did not rely on this factor alone. Accordingly, it was not improper for the ALJ to consider Claimant's daily activities in assessing her credibility.

Finally, the ALJ specifically found that Claimant failed to follow her treating physicians' advice to stop smoking, which could possibly somewhat alleviate her symptoms. In late 2006, two of Claimant's doctors, from different facilities, asked her to stop smoking (TR 249, 299), but Claimant testified she was still smoking 5 cigarettes a day at the time of the hearing before the ALJ. (TR 42). The ALJ concluded that this "failure to follow medical

- 13 -

advice," "tends to suggest that her symptoms are not as severe as alleged." (TR 20).

Based on foregoing, it is clear that the ALJ did not "discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant was not supported by objective medical evidence," but rather made "specific findings that are supported by the record."

### 2. Whether the ALJ Properly Weighed Medical Source Opinion Evidence

Claimant argues that the ALJ did not give proper weight to the opinions of her treating physicians. When evaluating the medical evidence throughout the five-step process, the ALJ must give appropriate consideration based on the source of testimony. The ALJ should afford the most weight to the treating physician's opinion, a lesser amount of weight to an examining physician's opinion, and an even lesser amount to a physician who has neither treated nor examined the claimant. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

If the treating physician's opinion is not contradicted by another physician, it is given controlling weight and may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 632 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). However, even if there is conflicting medical evidence, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*

Similarly, the ALJ may only reject the uncontradicted opinion of an examining physician by presenting clear and convincing reasons supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). If the examining physician's opinion is contradicted, the ALJ must still offer specific and legitimate reasons for rejecting the opinion. *Id.* If an examining physician's opinion differs from the treating physician's opinion, and both opinions are based on the same medical findings and differ only in their ultimate conclusions, then the treating physician's opinion is still entitled to controlling weight. *Orn*, 495 F.3d at 632. However, if the examining physician's conflicting opinion is based on independent findings, e.g., a different diagnosis

- 14 -

or findings from different objective medical tests, then the treating physician's opinion is no longer given controlling weight, but is still entitled to deference. *Id.* at 632-33.

Claimant argues that the ALJ erred in failing to properly consider the opinion of Dr. Gorman, one of Claimant's treating physicians. The ALJ specifically considered Dr. Gorman's opinion. The ALJ noted that she was not giving Dr. Gorman's medical assessment (TR 491-492) controlling weight because he did not provide the maximal exertional functions that Claimant could perform, he did not provide any explanation as to why Claimant was totally precluded from stooping given her impairments, Claimant's course of treatment did not reflect the level of impairments indicated by Dr. Gorman, and Dr. Gorman's opinions conflicted with the opinions of Dr. Bitza, another of Claimant's treating physicians and Dr. Chatham, Claimant's examining physician. (TR 20). The ALJ specifically relied on the February 2007 report of Dr. Bitza that Claimant's impairments would not impose any limitations for 12 months. (TR 20 and TR 229). The ALJ also specifically relied on the opinion of Dr. Chatham, an examining physician, that Claimant could perform sedentary work. (TR 20 and TR 376). Based on the foregoing, it is clear that the ALJ gave specific and legitimate reasons for discounting Dr. Gorman's opinions as to the *extent* of Claimant's impairments.

## V.   CONCLUSION

Accordingly, the Court finds that the ALJ did articulate sufficient reasons justifying the decision and the benefit and appropriately weighed Claimant's subjective complaint reporting and medical source opinion evidence. However, as set forth herein, further proceedings are necessary to resolve issues concerning Claimant's past relevant work and whether she can perform such past relevant work.

///

///

///

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

DATED this 20th day of March, 2012.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge